# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Julio L. Cruz<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 13-M-480<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __2010 to the present__ in the county of __Milwaukee__ in the __Eastern__ District of __Wisconsin__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | Conspiracy to possess with intent to distribute and distribution of 500 grams of more of a mixture and substance containing cocaine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Detective Jasemin Pasho
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 30, 2013

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin     William E. Callahan, Jr., U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND APPLICATION FOR SEARCH WARRANT

I, Jasemin Pasho, having been duly sworn on oath, state as follows:

## I. TRAINING AND EXPERIENCE

1. I have been a employed as a Detective at the Milwaukee Police Department for approximately 16 ½ years. I am currently assigned to the Milwaukee High Intensity Drug Trafficking Area (HIDTA) Drug Gang Task Force. I am federally deputized by the United States Department of Justice, Federal Bureau of Investigation. I have participated in numerous investigations involving violations of federal law, including investigations involving money laundering, drug trafficking violations, white collar crime, public corruption, and RICO investigations. I have had both formal training in and participated in numerous complex investigations including many investigations which utilized wiretaps.

   a. I have utilized informants to provide information and evidence when investigating various criminal offenses. Through informant interviews, consensually recorded conversations, and extensive debriefings of individuals involved criminal activity, I have learned about the manner in which criminal individuals and organizations function in Wisconsin as well as in other areas of the United States;

   b. I have relied upon informants to purchase controlled substances, purchase firearms, and purchase other evidence;

   c. I have extensive experience conducting both physical and electronic surveillance of individuals engaged in illegal activity. I have participated in the execution of numerous search warrants where controlled substances, money, business records, stolen property, firearms, and records of the illegal activity were seized;

   d. I have extensive experience with individuals who attempt to hide their illegal proceeds by the use of nominees to purchase assets, use of extensive cash purchases, use of cash payment of bills, use of safety deposit boxes, use of trusted associates to store bulk cash, and the use of legitimate business to report the illegal profits as legitimate business income.

    e.      I am familiar with the language utilized over the telephone to discuss various criminal activities and know that the language is often limited, guarded, and coded;

    f.      I know that individuals involved in drug trafficking and individuals involved in illegal activity often use electronic equipment, cellular and land line telephones, and the internet to conduct their criminal operations;

    g.      I know that criminals commonly have in their possession and at their residences and other locations where they exercise dominion and control, business and financial records, cash, valuables, and records relating to assets; and

    h.      I have been assigned to numerous investigations which utilized court-authorized interceptions of communications and have been trained to operate the equipment utilized to conduct such operations.

## II.    TARGET SUBJECT AND TARGET LOCATION

    2.      Based on my personal participation in this investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I submit that the facts contained in this affidavit demonstrate probable cause to believe that beginning sometime in 2011 and continuing to the present, in the State and Eastern District of Wisconsin, **Julio Luis Cruz** (h/m dob: 08/09/1970) (Target Subject), and others known and unknown have committed the following federal felony offenses: violations of Title 21, United States Code, Sections 841(a)(1) (possession with the intent to distribute and distribute controlled substances), 846 (conspiracy to possess with the intent to distribute and distribute controlled substances), and 843(b) (use of communications facilities to facilitate controlled substance felonies)(Target Offenses).

    3.      Based on the below information, I also submit that there is probable cause to believe that evidence of the above-referenced crimes be located in the following Target

2

Location: 1664 S. 56th Street, West Allis, Wisconsin, more particularly described in Attachment A.

4. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below and from my review of recorded calls to date, oral and written reports of other law enforcement officers participating in this and related investigations, and records, documents, and other evidence obtained during this investigation.[1] The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews of confidential informants, review of documentary evidence; court-authorized electronic surveillance, recorded telephone calls, controlled purchases of narcotics, controlled payments of money, execution of search warrants, and review of physical surveillance.

5. Because this affidavit is submitted for the limited purpose of securing authorization for a criminal complaint and corresponding arrest warrant for the above-listed Target Subject and to search the above-listed Target Location, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the criminal complaint, arrest warrant, and search warrant.

---

[1] Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

3

## III. PROBABLE CAUSE

6. Beginning in October 2011, case agents received information from a Confidential Source, CS 12-001, about drug trafficking activity in the Milwaukee area. On numerous dates between October 2011 and ____ 2012, CS 12-001 was interviewed and provided detailed information about the current and past drug-trafficking activities of subjects associated with this Drug Trafficking Organization (DTO), as well as with about individuals involved in the interstate transportation of stolen tractor-trailers which contained merchandise and food products. For several reasons, case agents believe CS 12-001 is reliable and credible. First, CS 12-001 has been providing information since October, 2011. Second, CS 12-001's information is substantially against CS 12-001's penal interest. Third, the information provided by CS 12-001 is consistent with evidence obtained elsewhere in this investigation where CS 12-001 was utilized, and/or substantial portions of CS 12-001's information have been corroborated through independent investigation, including recorded conversations, surveillance, and information from other confidential sources. For example, CS 12-001 provided information to case agents regarding his involvement with the DTO which included identifying his co-conspirators and techniques used by the DTO to avoid law enforcement detection. During subsequent debrief interviews with CS 12-001, s/he positively identified photographs of co-conspirators and agreed to cooperate with the United States government by providing testimony against the subjects in federal court when and if called upon. CS 12-001's information was corroborated through other confidential informants. Finally, CS 12-001 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS 12-001 has a prior felony conviction for Conspiracy to Transport Stolen Goods and Stolen Motor

Vehicles in Interstate Commerce. CS 12-001 is cooperating in an attempt to earn sentencing consideration in a federal case.

7. CS 12-001 stated that Julio Luis Cruz, who resides at 1664 South 56th in West Allis, Wisconsin, sells ounce quantities of cocaine to people in the Milwaukee area. According to CS 12-001, Julio L. Cruz drives a black Suburban. CS 12-001 stated that in September 2011, CS 12-001 bought an ounce of cocaine powder from Julio Cruz at a cost of $1,100. CS 12-001 stated s/he would meet Julio L. Cruz at his home and that Cruz provided the cocaine to CS 12-001. CS 12-001 and Cruz had an agreement to split any profit from sales done by CS 12-001. CS 12-001 usually got the cocaine at $1100/ounce and sold it at a higher price to a consumer. CS 12-001 stated s/he usually obtained cocaine from Cruz a couple of times per month during the previous year, obtaining amounts ranging from half-ounce to multiple-ounce quantities..

8. CS 12-001 stated that Julio L. Cruz is supplied by a second Hispanic male, hereinafter CS 13-001. CS 12-001 stated that CS 13-001 obtained 20 pounds of high-grade marijuana and four to five kilograms of cocaine on a regular basis, which CS 13-001 then supplied Julio L. Cruz. CS 12-001 has heard CS 13-001 say that the marijuana comes from California. CS 12-001 has observed the marijuana hidden in paint buckets.

9. On Monday, December 5, 2011, CS 12-001, agreed to make a controlled drug purchase from Julio L. Cruz. At the direction of the case agents, CS 12-001 made contact with Julio L. Cruz using text messages and telephone calls to arrange a meeting later in the evening at 1664 South 56th Street, West Allis, Wisconsin. During the calls and texts, CS 12-001 agreed to purchase a half ounce quantity of cocaine from Julio L. Cruz. Before driving to Cruz's residence, CS 12-001's person and vehicle were searched for any contraband and/or money with negative results. CS 12-001 was provided with a body recorder and $600 of pre-recorded buy money. CS-

5

12-001 was then surveilled driving to at 1664 South 56th Street. At the residence, he met with Cruz who had just exited the residence. Case agents observed the two walking together into the garage at 1664 South 56th Street. CS-12-001 later stated that while in the garage, s/he gave the buy money to Julio L. Cruz and CS 12-001 received the bag of cocaine from Cruz, who had the cocaine in his jacket pocket. CS 12-001 then met with case agents at a pre-determined location and turned over the suspected cocaine to case agents. CS 12-001's person and vehicle were again searched for contraband and/or money with negative results. Case agents conducted a field test on the suspected cocaine, which tested positive for cocaine at a total weight of 13.7 grams.

10. On Tuesday, January 10, 2012, CS 12-001 again agreed to make a controlled buy of cocaine from Julio L. Cruz at the direction of case agents. CS 12-001 made contact with Cruz to arrange to meet Cruz at his residence, 1664 South 56th Street. CS 12-001's person and vehicle were searched for any money and/or contraband with negative results. CS 12-001 was provided with a body recorder and $600 in pre-recorded buy money. Upon CS 12-001's arrival at 1664 South 56th Street, case agents observed Julio L. Cruz in the garage of the residence, after previously having been observed walking repeatedly between the house and garage. CS-12-001 met with Julio L. Cruz at the garage. Surveillance agents observed Julio L. Cruz get into CS's vehicle and then saw Cruz drive CS 12-001's vehicle northbound in the alley between 56th and 55th Sts. Case agents observed Julio L. Cruz park the car in the 5500 block of West Greenfield Avenue. A short time later, agents Cruz returned to the garage at 1664 South 56th Street and exited CS 12-001's vehicle. CS 12-001 and Cruz then met again.

11. CS 12-001 met with case agents at a pre-determined location, where s/he turned over a baggie containing suspected cocaine. CS 12-001's person and vehicle were again searched for contraband/money with negative results. CS 12-001 told case agents that Cruz was given the

6

pre-recorded money in the garage at 1664 South 56th Street, and that CS 12-001 then observed Julio L. Cruz make a phone call. CS 12-001 stated that after the phone call, Cruz took CS 12-001's vehicle and drove up the block to get the half ounce of cocaine. CS 12-001 knows from past drug deals with Cruz that Cruz has a relative who resides on Greenfield Ave. who sometimes stores cocaine for Cruz. Cruz returned after a few minutes. Cruz left the cocaine on the sun visor in CS 12-001's vehicle. CS 12-001 accompanied case agents to the 5500 block of Greenfield Avenue and pointed to the address of 5509 West Greenfield Avenue as being the apartment building that Julio L. Cruz has gone to obtain cocaine in the past. In the past year, CS 12-001 had been to that address and observed Julio L. Cruz with nine ounces of cocaine in the garage area of the building at 5509 W. Greenfield Ave. Case agents conducted a field test on the suspected cocaine which tested positive for cocaine at a total weight of 14.0 grams.

      12.      On July 12, 2012, case agents met with CS 12-015 and discussed drug sources in the Milwaukee area. On numerous dates between July 2012 and April 2013, CS 12-015 was interviewed and provided detailed information about the current and past drug-trafficking activities of subjects associated with this Drug Trafficking Organization (DTO). For several reasons, case agents believe CS 12-015 is reliable and credible. First, CS 12-015 has been providing information since July 2012. Second, CS 12-015's information is substantially against CS 12-015's penal interest. Third, the information provided by CS 12-015 is consistent with evidence obtained elsewhere in this investigation where CS 12-015 was utilized, and/or substantial portions of CS 12-015's information have been corroborated through independent investigation, including recorded conversations, surveillance, and information from other confidential sources. CS 12-015 provided information to case agents regarding his involvement with the DTO which included identifying his co-conspirators and techniques used by the DTO to

7

avoid law enforcement detection. During subsequent debrief interviews with CS 12-015, s/he positively identified photographs of co-conspirators and agreed to cooperate with the United States government by providing testimony against the subjects in federal court when and if called upon. CS 12-015 made more than three controlled buys at the direction of case agents, which led to a search warrant that resulted in the seizure of controlled substances and evidence of drug trafficking. CS 12-015's information also has been corroborated through other confidential informants. Finally, CS 12-015 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS 12-015 has no prior convictions. CS 12-015 has not been charged, but could face federal charges related to drug offenses, and is hoping for consideration from the court when charges are filed.

13. In admitting to his/her own drug trafficking, CS 12-0015 admitted knowing and dealing with Julio L. Cruz, CS 13-001, and "Fro." CS stated that CS has known CS 13-001 for three to four years and that CS has sold CS 13-001 at least a half-dozen kilograms of cocaine during that time period. CS 12-015 stated that CS 13-001's main supplier is Froylan Bautista.

14. On July 17, 2012, case agents again interviewed CS 12-015 about drug sources and co-conspirators. CS 12-015 stated that based on two recent arrests, CS 13-001 and Bautista were concerned that Julio L. Cruz was cooperating with police. According to CS 12-015, Cruz was selling cocaine to one of the arrested individuals.

15. On July 20, 2012, case agents met with CS 12-001 and discussed drug sources in the Milwaukee area. CS 12-001 stated that s/he had recently spoken to Julio L. Cruz. According to CS 12-001, Cruz was concerned about the recent arrests of two individuals (the same individuals mentioned by CS 12-015). Cruz was concerned that these two individuals were cooperating with police. As a result, Cruz told CS 12-001 that he was going to temporarily stop

8

selling drugs.

16. Case agents confirmed the arrests of the two individuals discussed by CS 12-001 and CS 12-015. During execution of search warrants at the time of their arrests, one individual had 10.56 grams of cocaine at his residence; the other had 37.3 grams of cocaine at his residence.

17. On January 8, 2013, following execution of a search warrant at his/her residence, CS 13-001 met with case agents and discussed drug sources in the Milwaukee area. On numerous dates between January 2013 and April 2013, CS 13-001 was interviewed and provided detailed information about the current and past drug-trafficking activities of subjects associated with this Drug Trafficking Organization (DTO). For several reasons, case agents believe CS 13-001 is reliable and credible. First, CS 13-001 has been providing information since January 2013. Second, CS 13-001's information is substantially against CS 13-001's penal interest. Third, the information provided by CS 13-001 is consistent with evidence obtained elsewhere in this investigation where CS 13-001 was utilized, and/or substantial portions of CS 13-001's information have been corroborated through independent investigation, including recorded conversations, surveillance, and information from other confidential sources. For example, CS 13-001 provided information to case agents regarding his involvement with the DTO which included conducting recorded meetings with targets of this investigation, identifying his co-conspirators and techniques used by the DTO to avoid law enforcement detection. During subsequent debrief interviews with CS 13-001, s/he positively identified photographs of co-conspirators and agreed to cooperate with the United States government by providing testimony against the subjects in federal court when and if called upon. Finally, CS 13-001 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed. CS 13-001 has no felony convictions. CS 13-001 is

cooperating in an attempt to earn consideration in a potential federal case.

18. On January 16, 2013, CS 13-001 met with case agents and discussed drug sources in the Milwaukee area. CS 13-001 stated that s/he would obtain cocaine from Froylan Bautista and then CS would supply Julio Cruz with half of the cocaine. CS 13-001 stated that s/he obtained more than two kilograms of cocaine from Froylan Bautista during the time frame of January 2011 to January 2013. During the same time frame, CS 13-001 admitted providing Julio Cruz with approximately one kilogram of cocaine. CS 13-001 stated that they obtained the cocaine on consignment from Bautista. CS 13-001 stated that s/he had a two-to- three day window to pay back Froylan Bautista.

19. In the interview on January 8, 2013, CS 13-001 stated that Julio L. Cruz showed him cocaine in October or September 2012. Cruz had stopped by CS 13-001's house and showed CS 13-001 several ounces of cocaine. CS 13-001 told agents that the cocaine had been "re-rocked" and it did not look good. CS 13-001 did not buy any of it because of the quality. CS-13-001 told case agents that s/he knows Julio L. Cruz drives a black Yukon truck which is normally parked in front of Cruz's residence of 1664 South 56th Street, West Allis.

20. On February 11, 2013, case agents observed Julio Cruz park his black Yukon, Wisconsin license plate 955SMX in front of 1664 South 56th Street. Cruz, a female passenger and a child exited the Yukon and went into 1664 South 56th Street. On February 13, 2013, case agents observed Julio Cruz arriving in his black GMC Yukon, Wisconsin license plate 955SMX at 1664 South 56th Street and go into his home. This Yukon was previously registered to Cruz's wife, Jennifer Cruz, at 1664 South 56th Street, although the registration address has recently been changed to Jennifer Cruz, 16520 W. Bluemound Road, Brookfield.

21. On January 13, 2013, the West Allis Police Department responded to 2853 South

106th Street, West Allis, and took a complaint from Jennifer M. Cruz. Ms. Cruz stated that her husband, Julio L. Cruz, had made a threat to harm her and had physically stopped her from leaving her residence. Officers arrested Cruz at his residence, 1664 South 56th Street, West Allis. Cruz was charged with Disorderly Conduct Case # 2013CM000435. Before the case was dismissed on April 17, 2013, Cruz listed his address on court records as 1664 South 56th Street, West Allis.

22.     As of April 29, 2013, the utilities at 1664 S. 56th Street, West Allis, were registered to Julio Cruz and Jennifer Cruz at that address and had been so registered since December 2006.

## IV. CONCLUSION

23.     Based on the facts set forth above, I allege the facts contained in this affidavit demonstrate probable cause to believe that beginning in 2011 and continuing to the present, in the State and Eastern District of Wisconsin, Julio L Cruz, and others known and unknown have committed the following federal felony offenses: violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute and distribute controlled substances), 846 (conspiracy to possess with the intent to distribute and distribute controlled substances), and 843(b) (use of communications facilities to facilitate controlled substance felonies).

24.     Based on the above information, I submit that probable cause exists to believe that searching the residence located at 1664 South 56th Street, West Allis, WI will reveal evidence of violations of 21 U.S.C. §§ 841(a)(1), and 846, conspiracy to possess with the intent to distribute and to distribute controlled substances, specifically those items listed in Attachment B.

11

Case 2:13-mj-00480-WEC    Filed 04/30/13    Page 12 of 14    Document 1

# Attachment A



**1664 South 56th Street, West Milwaukee, WI**

The house is described as being a two story single family residence with tan siding and brown trim around the windows and the numbers "1664" affixed to the west side of the house to the right of the front door above the mailbox. This residence has a two car detached garage with tan siding and white overhead doors.

# ATTACHMENT B

1.  Paraphernalia associated with the manufacture and distribution of controlled substances including but not limited to scales and other measuring devices, weighing devices, packaging materials and containers to hold controlled substances, and documents related to the manufacture or growing, harvesting, distribution, sale, or possession of marijuana.

2.  Duffel, canvas bags, suitcases or other large contains to hold or transport controlled substances.

3.  Proceeds of drug trafficking activities, such as United States currency, precious metals, financial instruments, and jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry or other items obtained with the proceeds from drug trafficking activities.

4.  Firearms, ammunition, magazines, gun boxes, firearm purchase records or receipts, and other paraphernalia associated with firearms.

5.  Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances.

6.  Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed.

7.  Personal telephone books, address books, telephone bulls, photographs, letters, cables, telegrams, facsimiles, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in drug trafficking activities.

8.  Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities.

9.  Cellular telephones, SmartPhones, pagers, text messaging systems, and other communication devices, and any and all records associated with such communications services.

10. Records, items and documents reflecting travel for the purpose of participating in drug trafficking activities, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel.

11. Indicia of occupancy, residency or ownership of the premises and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents and keys.

12. Photographs, videotapes or other depictions of assets, firearms, coconspirators, or controlled substances.